IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHENZHEN BUXIANG NETWORK TECHNOLOGY CO., LTD. d/b/a VEKEN, <br><br> Plaintiff, <br><br> v. <br><br> BODUM USA, INC., <br><br> Defendant. | No. 20cv1726 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT**

Defendant Bodum USA, Inc. ("Bodum" or "Defendant"), by its undersigned attorneys, hereby submits its Memorandum of Law in Support of Defendant's Motion to Dismiss Complaint for Declaratory Judgment (the "Motion").

**I.   INTRODUCTION**

Plaintiff, Shenzhen Buxiang Network Technology Co., Ltd. d/b/a Veken ("Veken" or "Plaintiff") has brought this action for a declaratory judgment that it is not infringing on Bodum's trade dress rights in its CHAMBORD® ("Chambord") French press coffeemaker. Bodum manufactures housewares products, including its coffee and tea presses. Bodum's most recognizable and popular product is its iconic Chambord, which it has been selling and distributing for almost forty years. In or about March of 2019, Bodum discovered that Veken had been selling French press coffeemakers which looked substantially similar to Bodum's Chambord. On December 3, 2019, Bodum sent Veken a cease and desist letter notifying Veken of its infringement of Bodum's trade dress rights in its Chambord design, and demanding, in part, that Veken cease

all sales of the infringing product. Bodum also reported the infringing product to Amazon.com. Veken responded by bringing the instant lawsuit.

Plaintiff brought three claims: Count I seeks a declaration of non-infringement, with Veken contending that consumers would not be confused between these two substantially similar products; Count II seeks a declaration that the Chambord lacks secondary meaning sufficient to confer trade dress rights; and Count III seeks a declaration that the Chambord is functional and thus not protected under trade dress law. Counts II and III, however, have already been addressed in this District in favor of Bodum.

In 2018, Bodum prosecuted and won a jury trial concerning its trade dress rights in the same product that is at issue here: the Chambord. The defendant in that case made the same arguments as to lack of secondary meaning and functionality as Veken does here. In finding that Bodum did, in fact, establish that the Chambord trade dress had acquired secondary meaning, and was nonfunctional, the jury determined that Bodum does have protectable trade dress rights in its Chambord. Bodum's rights in this particular product were then affirmed in the post-trial rulings by Judge Kennelly and in a unanimous Seventh Circuit decision. The United States Supreme Court declined to hear the case. Bodum's trade dress rights in the Chambord were, thus, confirmed.

Part and parcel to Bodum's trade dress rights is the secondary meaning of the distinctive and iconic Chambord product and its nonfunctionality. Secondary meaning and nonfunctionality have nothing to do with this plaintiff or the Veken press—they have to do with the protected product (the Chambord). As such, since the secondary meaning and nonfunctionality of the Chambord trade dress are already established through binding Seventh Circuit precedent, Plaintiff's Count II and Count III should be dismissed for failure to state a claim upon which relief can be granted.

## II.     FACTUAL BACKGROUND

Veken is a designer and seller of household products, including French press coffee makers. (Dkt. 10, Am. Compl. ¶ 6.) Bodum also manufactures French press coffeemakers, including the Chambord. (*Id.* at ¶¶ 19-20.) Veken has sold one particular French press in North America exclusively through Amazon under Amazon's product identification no. ASIN B07FCLBRTZ (the "VEKEN French Press"), and continues to have a supply of that press in stock at Amazon. (*Id.* at ¶ 7.) Veken alleges that on December 3, 2019, Amazon de-activated the listing for the VEKEN French Press in response to a request from Bodum.[1] (*Id.* at ¶ 9.) On or about that same day, Bodum demanded that Veken stop selling the VEKEN French Press, and threatened an infringement lawsuit against Veken for trade dress infringement under the Lanham Act. (*Id.*)

Veken alleges that its brand name "Veken" on its products helps to identify the source of the product, and that Bodum also displays its own mark on the Chambord product. (*Id.* ¶¶ 16, 20.) Bodum has not registered the Chambord product as a trademark (although the name is registered). (*Id.* ¶ 21.) However, Bodum claims protection of the design of the product under trademark law (specifically, unregistered trade dress), with the mark being characterized by a combination of visual elements of the Chambord. (*Id.* ¶ 22.) Bodum is not the only company that sells the Chambord configuration (*Id.* at ¶¶ 30-35, 44-47), but the products referenced in the Amended Complaint in these paragraphs are the "Bonjour," which Veken knows by being expressly

---

[1] Amazon has not, in fact, de-activated the listing for the VEKEN French Press. The Press is still available for sale on Amazon.com, and can be found for purchase at the following link: https://www.amazon.com/Veken-Stainless-Screens-Resistant-Borosilicate/dp/B07FCLBRTZ/ref=asc_df_B07FCLBRTZ/?tag=&linkCode=df0&hvadid=344108248508&hvpos=&hvnetw=g&hvrand=2024759123087017323&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=1016367&hvtargid=pla-756401084092&ref=&adgrpid=72020978634&th=1.

informed on December 20, 2019 via email, is the one product that is licensed to copy the design of the Chambord.[2]

Veken filed its Complaint for Declaratory Judgment on March 11, 2020 ("Complaint"). (*See* Dkt. 1, Compl.) Veken then filed its Amended Complaint for Declaratory Judgment on April 22, 2020 ("Amended Complaint"). (Dkt. 10, Am. Compl.) In Veken's Amended Complaint, Veken brought three counts: Count I for declaratory judgment on non-infringement based on no likelihood of confusion about source; Count II for declaratory judgment on non-infringement based on lack of distinctiveness; and Count III for declaratory judgment of non-infringement based on functionality.

**III.    ARGUMENT**

    **A.    Legal Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Dismissal under 12(b)(6) for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 558 (2007). A claim may be dismissed if the plaintiff "has pled herself out of court by alleging facts that demonstrate she has no viable claim, or if she fails to allege facts that plausibly suggest reliance." *Roppo v. Travelers Cos.*, 100 F.Supp.3d 636, 643 (N.D. Ill. Apr. 16, 2015) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). To prove unregistered trade dress, the moving party must prove that both "the claimed trade dress has acquired secondary meaning" and "the claimed trade dress is non-

---

[2] While Bodum will address Veken's deliberately and knowingly false pleading, this fact is irrelevant to this motion to dismiss—Bodum does not ask for this matter outside of pleading to be considered.

4

functional." *See* 15 U.S.C. § 1125(a)(3); *see also Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1015 (7th Cir. 2005).

### B. Veken Cannot Sustain its Claims Because of Seventh Circuit Precedent

The question as to whether or not Bodum has trade dress rights in the Chambord has already been answered in the affirmative by a jury before this Court, and upheld by the Seventh Circuit. Seventh Circuit precedent is binding on this Court, and must be followed. *See In re Swanson,* 289 B.R. 372, 374 (Ill. Bk. Ct. 2003) ("The binding precedent rule, that lower courts must follow the holdings of their court of appeals and the Supreme Court, affords a lower court no discretion where a higher court has already decided the issue before it."); *see also Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) ("In ascertaining whether a right is clearly established, this court looks to controlling . . . 7th Circuit precedent."). That is, "only in limited circumstances may district courts depart from Seventh Circuit precedent—namely, when the district court is 'powerfully convinced' that the Seventh Circuit would overrule its previous decision at the first opportunity." *See FDIC v. Spangler*, 2012 U.S. Dist. LEXIS 163027, at *15 (N.D. Ill. Nov. 15, 2012); *see also Heyer v. FNBC Bank & Trust, Inc. (In re Heyer)*, 583 B.R. 141 (N.D. Ill. B.K. Jan. 17, 2018) (granting defendant's motion to dismiss complaint where Seventh Circuit precedent made clear that plaintiff did not have standing to pursue claim).

This is not one of the very limited circumstances in which this Court may be so compelled that the Seventh Circuit would overrule its previous decision. Bodum's trade dress rights in the Chambord were squarely established. Instead, this case is analogous to trademark cases in which the mark is established as incontestable. "Once a mark becomes incontestable, however, a defendant can no longer attack its validity by alleging it is merely descriptive and without secondary meaning." *B&B Hardware, Inc. v. Hargis Indus.*, No. 4:06CV01654 SWW, 2007 U.S.

5

Dist. LEXIS 68352, at *29-30 (E.D. Ark. Sept. 13, 2007) (dismissal reversed on inapplicable grounds because a change from contestable to incontestable involves a factual change).

Here, Veken, the declaratory plaintiff (essentially standing in the position of a defendant), cannot attack the status of Bodum's trade dress rights in the Chambord based on functionality or secondary meaning. In the matter of *Bodum USA, Inc. v. A Top New Casting, Inc.*, the jury found unanimously in Bodum's favor on its trade dress infringement claim against A Top New Casting, Inc. ("A Top") under the Lanham Act. 2018 U.S. Dist. LEXIS 95337, at *1 (N.D. Ill. June 6, 2018). As a condition of this verdict, the jury necessarily determined that the Chambord trade dress had acquired secondary meaning and nonfunctionality, since finding for Bodum on these elements was necessary to support the jury's verdict of protectable trade dress. After the trial, A Top brought motions for judgment as a matter of law and for a new trial, which were denied. *Id.* at *9. The jury's findings were affirmed by the Seventh Circuit, which makes its findings precedential to this Court. *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 498 (7th Cir. 2019).

The *A Top New Casting* plaintiff did not appeal the jury's verdict or the District Court's denial of the post-trial motions on the question of secondary meaning. That is likely because the Chambord's distinctive, iconic status (it has, among other things, been featured in MOMA and design publications as a work of art) is unassailable. The topic before the Seventh Circuit was functionality, and the Seventh Circuit unanimously found that this very product is nonfunctional.[3] Bodum does not need to prove its trade dress all over again. It is akin to a patent or trademark: once found valid by the courts, its validity cannot be attacked over and over by zealous infringers

---

[3] The Seventh Circuit held that the "claimed Chambord features are 'merely ornamental' and are not necessary to make the Chambord work better as a French press coffeemaker." 927 F.3d at 493.

6

without some evidence that is new or compelling. *See Armstrong v. Motorola, Inc.*, 374 F.2d 764, 769 (7th Cir. 1967) (citing *Montgomery Ward & Co. v. Clair*, 123 F.2d 878, 883 (8th Cir. 1941)) ("An inventor is not required to litigate the validity of his patent against every possible infringer.").

The Seventh Circuit analyzed this case in great detail. Veken, in its Amended Complaint, asserts nothing that the jury or Seventh Circuit did not already consider. The pleading burden rests with Veken. "[O]nce there has been a judicial determination of validity, the party challenging validity in a later action in the same court has the burden of presenting 'persuasive new evidence' of invalidity and demonstrating that there is a 'material distinction' between the cases." *Illinois Tool Works, Inc. v. Foster Grant Co.*, 547 F.2d 1300, 1302 (7th Cir. 1976). In *Illinois Tool Works*, the Seventh Circuit reasoned that "for reasons of stability in the law and judicial economy, we ordinarily will not reexamine *de novo* the decision of the court in the prior case but rather will limit ourselves to a consideration of whether, assuming the correctness of the earlier decision, additional facts not before the court in the prior case require a different result." *Id.*

Here, Veken has not pleaded anything new that was not before the jury, District Court, Seventh Circuit and United States Supreme Court pertaining to the Chambord trade dress, let alone any "persuasive new evidence" which demonstrates a "material distinction" between the instant case and *A Top*. Veken pleads only that "Bodum has not been the only company to sell French presses having the CHAMBORD configuration in the United States" and "the CHAMBORD configuration provides a significant aesthetic benefit that is unrelated to reputation." (Am. Compl. ¶¶ 30, 51.) However, Bodum already addressed, at length, in the *A Top* case that it seeks out, and stops, the sale of any and all French presses which substantially have the Chambord configuration. In fact, Bodum has attempted to do just that with Veken already.

7

Additionally, not only did the Seventh Circuit already determine, in the *A Top* case, that the Chambord configuration does not provide any non-reputation-related advantages (*Bodum v. A Top*, 927 F.3d at 492-93), but Veken fails to plead what those advantages could plausibly be. Therefore, because Veken has failed to plead any new material, let alone anything persuasive, that there exists a material distinction between the instant case and *A Top*, this Court should recognize the Chambord trade dress just as the jury and Seventh Circuit did in *Bodum v. A Top*, and dismiss the claims (Counts II and III) that seek declarations negating the proven Chambord trade dress.

### C. The Chambord Trade Dress Has Acquired Secondary Meaning

To demonstrate the well-foundedness of the decisions in the prior case, Bodum will discuss why its Chambord product was found to have secondary meaning. To establish secondary meaning, the moving party must show that, in the minds of the public, the primary significance of the trade dress is to "identify the source of the product rather than the product itself." *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 5161347, at *4 (N.D. Ill. Sept. 1, 2015). In other words, the producer "must demonstrate . . . that consumers understand the design elements to signify the goods' *origin* and not just its attributes." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579 (7th Cir. 2005) (emphasis in original). When determining whether a product's trade dress has acquired secondary meaning, courts consider the following factors: "(1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys." *TY Inc. v. Softbelly's Inc.*, 2006 U.S. Dist. LEXIS 100736, at *43 (N.D. Ill. Apr. 7, 2006).

Bodum has showcased the Chambord trade dress on French press coffeemakers sold in the United States since as early as 1983. *Bodum USA, Inc. v. A Top New Casting, Inc.*, 2017 U.S. Dist. LEXIS 212249, at *2 (N.D. Ill. Dec. 28, 2017). Bodum has "promoted the Chambord . . . through catalogs, television and radio advertising, advertisements in trade and general circulation

8

newspapers
newspapers and magazines, internet marketing, exhibits at housewares shows, and use of its sales force." *Id.* At 2-3.  The millions of dollars Bodum has spent on advertising the Chambord trade dress for decades, as well as the significant publicity the Chambord design has received, are strong evidence of secondary meaning. *See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1086 (7th Cir. 1988) (relying on evidence of substantial expenditures on advertising to find secondary meaning); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 796 F.2d 903, 907 (7th Cir. 1986) (relying on publicity and media attention received by the plaintiff's product to find secondary meaning of the plaintiff's mark).

Additionally, while Bodum sells a multitude of coffee products, the Chambord has consistently, every year, been Bodum's "figurehead" product, as well as one of its best-selling products.  *Bodum USA*, 2017 U.S. Dist. LEXIS 2122493 at *3 ("Between January 1, 1990 and June 30, 1997, Bodum sold over 350,000 CHAMBORD® coffeemakers, accounting for millions of dollars in sales.  Annual sales approximately tripled from 1996 to 2005, and from January 2005 through December 2016, Bodum sold over five million CHAMBORD® coffeemakers in the United States.").  Moreover, in addition to it selling on Amazon.com, Bodum has sold the Chambord through "a number of major retailers, including Starbucks, Target, Walmart, Crate & Barrel, and Macy's." *Id.*  Bodum's relationship with these major retailers in the United States, through which Bodum sells many Chambord presses, provides convincing evidence that the Chambord has an established place in the market.

The identifiability of the Chambord has led to a number of competitors promoting and offering for sale coffeemakers that closely resemble the Chambord, including the one at the center of this lawsuit.  *Id.*  Over the last twenty-five years, Bodum has sent well over fifty cease-and-desist letters regarding the Chambord trade dress, and filed fourteen lawsuits.  *Id.*  The vast

majority of the time, the infringing company or individual promptly agrees to stop selling the copy French press. However, on the fourteen occasions in which Bodum filed suit, eleven ended in settlements in which defendants agreed to stop selling the infringing product. Bodum has consistently and diligently taken all appropriate legal action to enforce the Chambord trade dress. The fact that so many companies have attempted to sell copies of the Chambord demonstrates the iconic nature of the product and recognizability by consumers in the marketplace.

Bodum's actions over the last three decades have solidified the Chambord's place as the staple of French press coffeemakers in the marketplace. There is no dispute that Bodum has been the exclusive distributor of the Chambord in the United States, and around the world, for nearly the last forty years.[4] Through Bodum's extensive advertising campaigns, presence in major brick-and-mortar, and online, retail platforms and diligence in locating, and halting, the impermissible selling of coffeemakers which closely resemble the Chambord, consumers understand the Chambord design as Bodum's. The Chambord's iconic and world-renowned design leaves no mistake as to its source. As such, the Chambord trade dress has acquired secondary meaning, contrary to Veken's assertions in its Complaint, rendering its Count II futile.

### D. The Chambord Trade Dress Is Nonfunctional

Bodum will also discuss the bases underlying the Seventh Circuit's affirmation of the nonfunctionality of the Chambord's design. To evaluate whether a claimed trade dress is functional, a court should determine whether the trade dress at issue "is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 523 U.S. 23, 32 (2001). Additionally, a product's trade dress may be

---

[4] While Bodum will not delve into factual matter in this motion to dismiss, Bodum will address the false allegations in Veken's complaint about the Brady "Bonjour" product because Bodum can prove that Veken already knows that this is the one product for which Bodum has issued a license to its competitor to embody the Chambord design. (Am. Comp. ¶¶ 30-35.)

functional if its exclusive use would put competitors at a "significant non-reputation-related disadvantage." *Id*. To determine whether a design is functional under these standards, courts in the Seventh Circuit look to the following factors:

> (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs of the item's purpose; [and] (5) the effect of the design feature on an item's quality or cost.

*Heckler & Kock, Inc. v. German Sport Guns GMBH*, 71 F. Supp. 3d 866, 914–15 (S.D. Ind. 2014) (quoting *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*, 647 F. 3d 723, 727–28 (7th Cir. 2011)). When applying these factors, the functionality analysis must focus on "the overall trade dress rather than on each individual feature." *See Clark Tile Co. v. Red Devil, Inc.*, 2007 WL 4335436, at *8 (N.D. Ill. Dec. 7, 2007).

Here, all of the above five factors weigh in favor of finding that the Chambord trade dress is nonfunctional. First, there are no utility patents that claim the elements that make up the Chambord trade dress. *Bodum v. A Top*, 927 F.3d at 497 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001)).

Second, the overall look and appearance of the Chambord trade dress is not based on utilitarian properties of its design elements. The Seventh Circuit made clear that in order to establish that it has a valid trade dress in the Chambord, "Bodum did not have to prove that something like a handle does not serve any function." *Bodum v. A Top*, 927 F.3d at 492. Rather, Bodum "merely needed to prove that preventing competitors from copying the Chambord's particular design would not significantly disadvantage them from producing a competitive and cost-efficient French press coffeemaker." *Id.* The Seventh Circuit concluded that the "claimed

11

Chambord features are 'merely ornamental' and are not necessary to make the Chambord work better as a French press coffeemaker." *Bodum v. A Top*, 927 F.3d at 493.

Third, Bodum has never advertised any utilitarian advantage of the Chambord trade dress. "Bodum's advertising for the Chambord never claimed any of its design features worked better than other options—for example, it never claimed the handle is an ergonomic shape nor that its four curved feet provide stability." *Id.* Rather, "the advertising focused on the classic look of the Chambord design." *Id.*

Fourth, there is "a plethora of evidence regarding the availability of alternative designs, which supported the Chambord's lack of functionality." *Id.* There are "competing manufacturers' French presses featuring different design elements, including those made of different materials, with differently shaped handles, lids, plunger knobs, and frames, those that do not have transparent carafes or do not have feet, and those with differently shaped external structures surrounding the cylindrical carafe." *Id.* at 493-94.

Fifth and finally, the Chambord trade dress does not affect the cost or quality of a French press coffeemaker. This is evident by performing a simple review of other French press coffeemakers on Veken's exclusive seller, Amazon's, website, or across the market. Specifically, the "Chambord design [i]s 'complex' and there are 'simpler ways of doing this.'" *Id.* at 494. The Chambord is not the least expensive method to manufacture a French press because "the more complex the structure, the more expensive the product is to manufacture." *Id.* Since "plastic is generally cheaper to use than metal in manufacturing . . . plastic-framed French presses would be cheaper to manufacture than the metal-framed Chambord." *Id.* If the Chambord trade dress affected the cost or quality of the product, so many competitors would not be able to manufacture French presses at similar, or cheaper, prices without embodying the Chambord trade dress. *See*

12

*Logan Graphic Products, Inc. v. Testus USA, Inc.*, No. 02 C 1823, 2003 WL 21011746, at *4 (N.D. Ill. May 5, 2003) (relying on evidence of competitors' products that looked different from the plaintiff's products to find that the trade dress at issue was not "something costly to do without"). Bodum chooses to incur higher manufacturing costs as a result of its Chambord trade dress, and could save costs by exclusively manufacturing French presses without the Chambord trade dress. Instead Bodum has, for almost forty years, made the conscious decision to incur additional cost on a trade dress that does not increase product durability, simply to separate the Chambord from other French presses.

Based on all these factors, as already analyzed by the Seventh Circuit, the Chambord trade dress is nonfunctional, and Plaintiff's Count III should therefore be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Count II and Count III of the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant further respectfully requests such other, further or additional relief in its favor and against Veken as this Court deems fair, just and equitable in the circumstances.

Respectfully submitted,

By:     /s/ Nicole J. Wing
        One of Its Attorneys

Nicole J. Wing, Bar No. 6291632
Cody D. Libman, Bar No. 6330034
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  July 27, 2020

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 27, 2020, the foregoing was electronically filed with the Court's CM/ECF Filing System, which will send a Notice of Electronic Filing to all parties of record who are registered with CM/ECF.

/s/ Nicole J. Wing